UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
INTERNET LAW LIBRARY, INC. :
and HUNTER M.A. CARR, :
 :
         Plaintiffs, : **OPINION**
 :
        -against- : 01 Civ. 6600 (RLC)
 :
SOUTHRIDGE CAPITAL MANAGEMENT, LLC, :
et al., :
 :
         Defendants. :
 :
------------------------------------------------------------------------x
COOTES DRIVE, LLC., :
 :
  Defendant, Counterclaim-Plaintiff, :
 :
        -against- :
 :
INTERNET LAW LIBRARY, INC., :
 :
  Plaintiff, Counterclaim-Defendant. :
 :
------------------------------------------------------------------------x
JACK TOMPKINS, KERWIN DROUET, et al., :
 :
         Plaintiffs, : 02 Civ. 0138 (RLC)
 :
        -against- :
 :
SOUTHRIDGE CAPITAL MANAGEMENT, et al., : :
 :
         Defendants. :
 :
------------------------------------------------------------------------x

APPEARANCES

KOERNER SILBERBERG & WEINER, LLP
Attorneys for Internet Law Library, Inc.
112 Madison Avenue, 3rd Floor
New York, NY 10016

        MARYANN PERONTI
            Of Counsel

CHRISTIAN, SMITH & JEWELL
Attorneys for Internet Law Library, Inc.
2302 Fannin, Suite 500
Houston, TX 77002

        GARY M. JEWELL
        JAMES W. CHRISTIAN
           Of Counsel

TATE & ASSOCIATES
Attorneys for Internet Law Library, Inc.
206 South 2d Street
Richmond, TX 77469

        RICHARD L. TATE
        JAMES W. CHRISTIAN
           Of Counsel

DLA PIPER RUDNICK GRAY CARY US LLP
Attorneys for Southridge Capital Management LLC, Cootes Drive LLC, Stephen Hicks, Daniel Pickett, Christy Constabile, David Sims, and Navigator Mangement Ltd.
1251 Avenue of the Americas
New York, NY 10020

        PERRIE M. WEINER
        CARYN G. MAZIN
        PALMINA M. FAVA
           Of Counsel

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Attorneys for Citco Group Limited
1177 Avenue of the Americas
New York, NY 10036

MICHAEL J. DELL
Of Counsel

LAW OFFICES OF MICHAEL S. ROSENBLUM
Attorneys for Southridge Capital Management LLC, Cootes Drive
LLC, Stephen Hicks, Daniel Pickett, Christy Constabile, David
Sims, and Navigator Management Ltd.
1875 Century Park East, Suite 700
Los Angeles, CA 90067

MICHAEL S. ROSENBLUM
AMY M. CAVES
Of Counsel

HANLEY CONROY BIERSTEIN & SHERIDAN LLP
Attorneys for Kirwin Drouet, Jack Thompkins and Hunter M.A. Carr
112 Madison Avenue
New York, NY 10016

THOMAS I. SHERIDAN, III
Of Counsel

MORRISON & FOERSTER LLP
Attorneys for Mark Valentine
1290 Avenue of the Americas
New York, NY 10104

CARL H. LOEWENSON, JR.
JAMES E. JOHNSON
JOEL C. HAIMS
Of Counsel

GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE, PC
Attorneys for Thomson Kernaghan & Co, Ltd., and TK Holdings, Inc.
One Pennsylvania Plaza
37th Floor
New York, NY 10119-3701

DEBRA A. CLIFFORD
Of Counsel

ROBERT L. CARTER, District Judge

**BACKGROUND**

This case is the result of several actions arising out of a set of related financing transactions.[1] The court consolidated these cases and named ITIS Holdings Inc. ("INL") (f/k/a ITIS Inc. and Internet Law Library), Hunter Carr, Kerwin Drouet, and Jack Tompkins the plaintiffs. Internet Law Library, Inc. v. South Ridge Capital Mgmt., LLC, 208 F.R.D. 59 (S.D.N.Y. 2002) (Carter, J). Accordingly, Southridge Capital Management LLC, Stephen Hicks, Daniel Pickett, Christy Constabile, David Sims, Navigator Management Ltd., The Citco Group Limited, Citco Trustees (Cayman) Limited and Cootes Drive, LLC ("Cootes Drive") were named defendants and Cootes Drive's claims against INL became counterclaims. Id.

Over the years the court has dealt with various issues, (see e.g., Internet Law Library Inc. v. South Ridge Capital Mgmt., LLC, 223 F.Supp.2d 474 (S.D.N.Y. 2002) (Carter, J) (hereinafter "Internet Law I")) with which familiarity is assumed. Most importantly, the court dismissed the plaintiffs' claims with prejudice in Internet Law Library Inc. v. South Ridge Capital Mgmt., LLC, 2003 WL 21537782 (S.D.N.Y. 2003) (Carter, J.) (hereinafter Internet Law II).

In the instant matter, defendant Cootes Drive moves for partial summary judgment against INL on its third counterclaim for breach of contract for failure to redeem preferred stock pursuant to a stock purchase agreement. Defendant Cootes Drive also seeks partial summary judgment against INL on its fourth counterclaim for breach of contract for failure to

---

[1] On January 12, 2001, INL, its Chief Executive Officer, Hunter M.A. Carr, and several shareholders filed suit against Southridge and a number of its representatives in the Southern District of Texas claiming, among other things, fraud, misrepresentation of material facts, manipulation of INL's stock and breach of contract. See Internet Law Library, Inc., et al. v. South Ridge Capital Mgmt., LLC et al, 01 Civ. 660 (RLC). Later, some additional shareholders of INL brought suit in the Southern District of Texas alleging much the same facts. See Brewer, et al. v. South Ridge Capital Mgmt., LLC, et al., 0202 Civ. 0138 (RLC). Finally, Cootes Drive LLC, a Southridge affiliate, brought suit in this court against INL and several of its directors asserting claims for breach of contract and fraud. See Cootes Drive, LLC v. Internet Law Library, Inc., 01 Civ. 0877 (RLC).

honor a promissory note. The plaintiffs cross move to dismiss defendants' counterclaims pursuant to Rule 37(b)(2)(C), F.R. Civ. P., due to alleged abuses of discovery procedures, and move for the court to reconsider its judgment entered July 8, 2005 dismissing plaintiffs' claims with prejudice. Under separate covers, plaintiffs have twice moved to supplement the record of the aforementioned motions and defendants have moved to strike some of plaintiffs' supporting affidavits. We consolidate the former motions with the latter and resolve them all in this opinion. Because of the nature of the issues raised in plaintiffs' motions, we reach them first.

## DISCUSSION

I     PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs' motion for reconsideration brought pursuant to U.S. Dist. Ct. S.D.N.Y. Local Civil Rule 6.3 is based on the court's possible oversight of two matters: (a) the *res judiciata* effect of its June 8, 2003 decision, specifically whether plaintiffs' affirmative defenses are barred, and (b) because Rule 37(b)(2)(C), Fed. R. Civ. P ("Rule 37") allegedly does not authorize sanctions. The parties have also made a request for the to court clarify these two issues, especially as they pertain to the order entered on July 8, 2003.

Under Rule 37, if a party "fails to obey an order entered under Rule 26(f)…the court in which the action is pending may…(C)…strike[] out pleadings or parts thereof…or dismiss[] the action or proceeding or any part thereof, or render judgment by default against the disobedient party." Plaintiffs' attempt to read the rule as only being applicable to parties who fail to participate in discovery is inapposite to the plain meaning of the statute. Moreover, the court has the inherent authority to dismiss a case when a party disobeys any of its orders. See Chambers v. Nasco, Inc., 501 U.S. 32, 45 (1991). Plaintiffs flagrantly

disregarded the discovery instructions of this court. As a result the court, acting well within its explicit and implicit authority, dismissed the plaintiffs' complaint. The court did not, however, dismiss the defendants' counterclaims or the plaintiffs' affirmative defenses to those counterclaims.

Cootes Drive argues that because the claims in plaintiffs' dismissed complaint form the basis for their affirmative defenses, plaintiffs' affirmative defenses are now barred by claim preclusion. Under the doctrine of claim preclusion, once a judgment has been made on the merits, the parties are prohibited from bringing a second suit based upon the same claims. Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc. 757 F. Supp 283, 291 (S.D.N.Y. 1991) (Conner, J.). Cootes Drive would be correct to assert that plaintiffs are precluded from bringing another complaint based upon the same claims found in their dismissed complaint.[2] However, that issue is not before the court. The court mindfully chose not to dismiss the plaintiffs' affirmative defenses. Thus, these affirmative defenses have not been adjudicated and there is no logic or fairness to treating them as if they have.

We confirm that the court was within its authority in dismissing plaintiffs' complaint and that plaintiffs' affirmative defenses still stand. The court did not overlook these subjects. Accordingly, the motion for reconsideration is denied.

II     PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

While arguing that the court lacked the authority to dismiss their claims pursuant to Rule 37, the plaintiffs have the audacity to request that we now dismiss Cootes Drive's counterclaims pursuant to the same rule and for the same alleged conduct. Without delving into the sophistical reasoning that allows them to entertain these contradictory propositions, it

---

[2] A dismissal under Rule 37 is an adjudication on the merits. See Rule 41(b), F.R. Civ P.; Nasser v. Isthmian Lines, 331 F.2d 124 (2d Cir. 1964).

3

bears repeating that plaintiffs flagrantly defied the court's order. The plaintiffs and not Cootes Drive disrespected the court. If Cootes Drive had done so, or if they ever do, the court would not hesitate to impose sanctions. The motion is denied.

III    PLAINTIFFS' MOTIONS TO SUPPLEMENT THE RECORD

On February 12, 2004 and on April 6, 2004, plaintiffs filed motions to supplement the record. The documents that are the subject of these motions were produced in connection with an action pending in Georgia. The documents themselves are the organizational documents and various agreements between companies affiliated with Cootes Drive. There are also letters and memoranda sent to and from these affiliated companies and the law firm of Dorsey & Whitney LLP, their transactional counsel. Plaintiffs assert that these documents demonstrate that the defendants operated their businesses in a tiered structure in order to limit liability. Even if true, this assertion does not make the documents relevant to Cootes Drive's claims of breach or plaintiffs' motions to dismiss and for reconsideration. Indeed, many of the documents predate the note and agreement by several years. Because plaintiffs have not sufficiently demonstrated the relevance of the documents to the motions that they seek to supplement, plaintiffs' two motions to supplement the record are denied.

IV    MOTIONS TO STRIKE PLAINTIFFS' AFFIDAVITS

Cootes Drive moves to strike portions of the affidavit of Hunter M. Carr, dated September 19, 2003 (the "Carr Affidavit") and the affidavit of Richard L. Tate, dated September 22, 2003 (the "First Tate Affidavit") based on evidentiary objections. The court finds that these affidavits comport with Rule 56(e). Cootes Drive's motions to strike the Carr Affidavit and the First Tate Affidavit are denied.

The Citco Group Limited and Citco Trustees (Cayman) Limited (the "Citco defendants") move to strike the Affidavit of Richard L. Tate, dated October 20, 2003 (the "Second Tate Affidavit"). The Second Tate Affidavit is submitted as a response to the Citco Defendants' motion for summary judgment. However, to the court's best knowledge or that of the Citco defendants, there never was such a motion. Submission of a reply to a non-existent motion is clearly inappropriate; furthermore, even if the submission of the affidavit was appropriate, the contents are not. An attorney's affidavit is typically used to present documents to the court and should not be used as counsel's personal vehicle to lobby the court. Universal Film Exchanges, Inc. v. Walter Reade, Inc., 37 F.R.D. 4, 5 (S.D.N.Y. 1965) (Levet, J.). In the Second Tate Affidavit, Tate, attorney for the plaintiffs, engages in extensive argumentation and draws numerous conclusions of law. Tate further swears to several matters of which he could have no direct personal knowledge of as an attorney that came upon this matter after the fact. The Second Tate Affidavit is more akin to a memorandum of law than to an attorney's affidavit. The motion to strike the Second Tate Affidavit in its entirety is granted.

V      COOTES DRIVE'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R. Civ. P.

1. Counterclaim Three: The Convertible Preferred Stock Purchase Agreement

After several months of negotiations, on or about May 11, 2000, Cootes Drive[3] and INL entered into the Convertible Preferred Stock Agreement (the "agreement"). Under the agreement, INL agreed to sell Cootes Drive shares of INL's 5% Series A Convertible Preferred Stock, which could be redeemed for INL common stock at Cootes Drive's request. Cootes Drive's motion for summary judgment on their third counterclaim is based on the failure of INL to honor one of these redemption requests.

To prevail on a claim for breach of contract under New York law, a party must show: 1) the existence of an agreement between the parties; 2) adequate performance of the contract; 3) breach of the contract; and 4) damages resulting from the breach.[4] The parties admit that the agreement exists, Pls. Statement Pursuant to Local Rule 56.1 ("Pls. Statement") at ¶ 1, and that the defendants performed. Id. at ¶ 6. INL admits that they did not honor Cootes Drive's redemption request. Id. at ¶ 14–15. Finally, defendants are able to show damages based upon the position it would have been in had INL performed under the agreement. Defs. Reply Mem. at 3. Cootes Drive has therefore met the requirements of their claim for breach against INL.

While INL does not contest that they failed to honor the redemption request, they defend their failure to redeem the stock on the grounds that defendants, among other things,[5] fraudulently induced them into entering the agreement and materially breached the agreement. As is the case here, "[o]ne who relies upon an affirmative defense to defeat an otherwise meritorious motion for summary judgment must adduce evidence which, viewed in the light

---

[3] Plaintiffs allege that Cootes Drive was inserted into the agreement at the eleventh hour as a substitute for Southridge and is in fact little more than a "straw man" created to insulate Southridge from liability.
[4] Internet Law I, 223 F.Supp.2d at 490 citing Harsco Corp., 91 F.3d at 348; See also Bridgeway Corp. v. Citibank, N.A., 132 F.Supp.2d 297, 305 (S.D.N.Y.2001) (Chin, J.).
[5] Plaintiff INL also raises a defense of "manipulation". This is not a recognized defense to breach of contract.

most favorable to and drawing all reasonable inferences in favor of the non-moving party, would permit judgment for the non-moving party on the basis of that defense." Frankel v. ICD Holdings S.A., 930 F.Supp. 54, 65 (S.D.N.Y. 1996) (Kaplan, J.). The non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." SHL Imaging, Inc. v. Artisan House, Inc. 117 F.Supp.2d 301, 304 (S.D.N.Y. 2000) (Pauley, J.). Within this framework the court will examine INL's defenses to Cootes Drive's counterclaims.

Plaintiffs contend that they relied upon a number of false statements made by the defendants outside of the agreement. Before deciding the underlying question of the merits of the fraudulent inducement claims, the court must first determine whether plaintiffs will be allowed to offer evidence pertaining to their claim. Under New York law, if a contract contains a merger clause, parol evidence is not admissible to "vary, or permit escape from the terms of an integrated contract."[6] However, a general merger clause will not preclude a party from introducing parol evidence that they were induced into entering a contract by means of fraud,[7] and a party may escape liability by establishing proof of such fraud.[8] The exception to this rule is that if the contract contains a disclaimer of certain representations, the relying party cannot claim that they were defrauded as to those specific representations.[9]

---

[6] Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir 1993) citing Fogelson v. Rackfay Construction Co., 300 N.Y. 334, 340, 90 N.E.2d 881, 884 (1950)

[7] Sabo v. Delman, 3 N.Y.2d 155, 161–62, 164 N.Y.S.2d 714, 717–19 (1957); Bridger v. Goldsmith, 143 N.Y. 424, 428, 38 N.E. 458, 459 (1894) ("fraud [in the inducement] vitiates every transaction")

[8] See Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 320, 157 N.E. 2d 597, 598, 184 N.Y.S.2d 599, 601(1959)(contract provided that "all understandings and agreements heretofore had between the parties hereto are merged in this contract...neither party [is] relying upon any statement or representation not embodied in the is contract").

[9] Citibank v. Plapinger, 66 N.Y.2d 90, 94, 495 N.Y.S. 2d 309, 312 (1985) (provision in multimillion dollar agreement stating that all guarantees are "absolute and unconditional" precluded defense of fraud)

7

The agreement between the parties contains both a merger clause[10] and a disclaimer of reliance.[11] Plaintiffs defend against these facts by asserting that the disclaimer is general and not specific.[12] In New York, no particular words are needed to make a disclaimer specific.[13] However, a specific disclaimer must "contain explicit disclaimers of the particular representations that form the basis of the fraud in the inducement . . . the touchstone is specificity."[14] The disclaimer in question appears at the end of warranties and representations section of the agreement and reiterates that no warranties or representations shall be made other than those in the immediately preceding section.[15] This is, by nature, a general disclaimer; it lacks the specificity to meet the standard the Second Circuit has applied under New York law. New York law requires more than a "generalized boilerplate exclusion [clause],"[16] a disclaimer must speak directly to the matter at issue in order to preclude a claim of fraud in the inducement.[17] The court therefore finds that plaintiffs are not barred from introducing evidence of fraud in the inducement.

---

[10] "The Transaction Documents . . . contain the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters . . ." agreement §4.2.
[11] "The Company acknowledges and agrees that no Purchasor makes or has made any representations or warranties with respect to the transactions contemplated hereby other than those specifically set forth in this Section 2.2" agreement §2.2.
[12] "[A] general merger clause is ineffective to exclude parol evidence to show fraud in inducing the contract . . ." Danann Realty at 320.
[13] Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S.A, 247 F.Supp.2d 352, 368 (S.D.N.Y.,2002) (Lynch, J.) quoting Lucas v. Oxigene, Inc., No. 94 Civ. 1691, 1995 WL 520752 at *5 (S.D.N.Y. 1995) (Mukasey, J.)
[14] Yanakas, 7 F.3d 310, 316 citing Grumman Allied Industries, Inc. v. Rohr Industries, Inc., 748 F.2d 729 (2d Cir. 1984)
[15] §2.2 includes representations by the purchasers regarding their organization and authority to enter into the agreement, investment intent, "accredited investor" status, financial experience, ability to bear risk of the investment, access to information and other securities related matters.
[16] Yanakas, 7 F.3d 310, 317.
[17] DiFilippo v. Hidden Ponds Associates,146 A.D.2d 737, 738; 537 N.Y.S.2d 222, 224 (N.Y.A.D. 2 Dept.1989) ("[b]ecause the [disclaimer] provision does not specifically disclaim reliance on any oral representation concerning the particular matter as to which plaintiff now claims he was defrauded, it does not foreclose him from offering evidence of the defendants' oral representations to the contrary.")

The court now examines the claims of fraud to determine if there is a genuine dispute as to a material fact. Under New York law, a claim of fraudulent inducement requires proof (1) that the defendants made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendants, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity, (8) to his injury.[18] Plaintiffs list nine misrepresentations that it claims the defendants made to them. Pls. Statement at ¶59. Although their claim has been plead with specificity,[19] plaintiffs have failed to prove reliance on each of the statements for one or more of the following reasons. Where the defendants' alleged misrepresentations are contradicted or subsumed by material in the agreement, for example, that INL's stock would be acquired for investment purposes and not for distribution or resale, we find that the plaintiffs' claims are unreasonable as a matter of law.[20] The court finds plaintiffs' reliance on other statements to be simply unreasonable. "Reliance means reasonable reliance." M.H. Segan Ltd. Partnership v. Hasbro, Inc. 924 F.Supp. 512, 526 (S.D.N.Y.1996) (Cote, J.) (internal quotations and citations omitted). After analysis of the material provided by the parties, the court concludes that alleged representations such as "[t]hey would not manipulate stock in order to depress its price", Pls. Statement at ¶ 59, are so important to the functioning

---

[18] Computerized Radiological Servs. v. Syntex Corp., 786 F.2d 72, 76 (2d Cir.1986) quoting Brown v. Lockwood, 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (1980).

[19] In the court's previous decision, the fraud claims were examined under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, passed pursuant to § 10(b). The court held that because the plaintiff satisfied the elements for pleading a claim under the statutes, they had satisfied the nearly identical common law fraud requirements as well. Internet Law I, 223 F.Supp.2d 489–90.

[20] See Brown v. E.F. Hutton Group, Inc., 991 F.2d 1020, 1031 (2d Cir.1993) (district court correct in granting summary judgment after holding reliance unreasonable as a matter of law where alleged misrepresentations were contradicted by offering materials); Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc., 343 F.3d 189, 196 (2d Cir.2003) (plaintiff's failure to insist that a representation be included in a stock purchase agreement "precludes as a matter of law a finding of reasonable reliance"); Feinman v. Schulman Berlin & Davis, 677 F.Supp. 168, 170–71 (S.D.N.Y.1988) (Kram, J.) (dismissal appropriate where plaintiffs relied on statements "directly contradicted by the clear language of the offering memorandum"); M.H. Segan Ltd. Partnership v. Hasbro, Inc., 924 F.Supp. 512, 527 (S.D.N.Y.1996) (Cote, J.) (party failed to establish reasonable reliance as a matter of law where misrepresentations were "directly contradicted" by written waiver agreement).

9

of a publicly traded company that no reasonable businessperson would have relied on them without putting them in writing after first discussing them at length.[21] Other misrepresentations, for example, that other companies funded by defendants experienced increases in their stock prices, Pls. Statement at ¶ 59, would have been easily verifiable.[22] The remaining statements are uncontraverted or without consequence. Holding, as we do, that INL cannot satisfy the reliance element of their affirmative defense of fraudulent inducement we need not look into the remaining elements of the claim. INL's affirmative defense of fraudulent inducement as to Cootes Drive is hereby struck insofar as it pertains to the third counterclaim.

The court held previously that plaintiffs have successfully pleaded claims to meet the elements of an action for breach of contract. <u>Internet Law I</u>, 223 F. Supp at 490. The court now searches the record to see if there is sufficient evidence to prove these allegations. What is in dispute is whether Cootes Drive's breach, namely, selling shares short in violation of the agreement, was material.[23] If Cootes Drive's breach was material, plaintiffs argue, plaintiffs were excused from performance. As discussed above, Cootes Drive has proven its claim and

---

[21] "Sophisticated business entities, when put on notice of the existence of material facts which have not been documented, assume the business risk that the facts may not be as represented because a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament." 247 F.Supp.2d 352, 369 (internal quotations omitted) <u>quoting</u> <u>Lazard Freres & Co. v. Protective Life Ins.</u>, 108 F.3d 1531, 1543 (2d Cir.1997).

[22] "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." <u>Grumman Allied Industries, Inc. v. Rohr Industries, Inc.</u> 748 F.2d 729, 737 (2d Cir. 1984).

[23] "Under New York law, for a breach of a contract to be material, it must go to the root of the agreement between the parties. A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." <u>Frank Felix Associates, Ltd. v. Austin Drugs, Inc.</u>, 111 F.3d 284, 289 (2d Cir. 1997) (internal quotations and citations omitted); <u>Wechsler v. Hunt Health Systems, Ltd.</u>, 186 F.Supp.2d 402, 413 (S.D.N.Y. 2002) ("Under New York law [materiality of a breach] is a question of law for the Court to decide.")

the burden is upon plaintiffs to produce evidence that would "permit judgment for the [plaintiffs] on the basis of [their] defense."[24]

Plaintiffs make grand allegations but actually prove very little. Construing the facts in the light most favorable to them, but without taking any untoward leaps of faith, plaintiffs have shown that defendant Cootes Drive sold 64,346 shares "short"[25] prior to receiving a waiver[26] from INL that enabled them to sell shares in this manner. During the 93 trading days before the waiver, defendant Cootes Drive maintained short positions on only 7 days. Pls. Statement at ¶ 24. The shorted sales make up a very small minority of the shares traded by Cootes Drive and a minute percentage of the overall total shares traded during the period. The court finds that, in light of the peculiarities of this case, this small amount of trading is merely a technical violation of the agreement; it does not go to the root of the agreement between the parties and is therefore not is enough to constitute a material breach and excuse INL from performance.[27]

The one piece of evidence that plaintiffs produced which tends to mitigate in their favor are the trading records showing that Thomas Kernaghan, an agent and broker for Cootes Drive, was shorting INL stock. However, these trades begin well before the agreement and plaintiffs do not show that the trades were done at the behest of Cootes Drive. Plaintiffs have requested additional discovery to flesh out these particular weaknesses in their defense of

---

[24] Frankel v. ICD Holdings S.A., 930 F. Supp. 54 (S.D.N.Y. 1996) (Kaplan, J.) (holding that custom crafted disclaimer language in notes negotiated between sophisticated parties waived a defense of fraud in the inducement)

[25] §3.13 of the agreement defines short sales as a sale where there was not an equivalent offsetting long position including shares due under a notice of conversion.

[26] Plaintiffs do not contest the authenticity of the waiver but allege the waiver was given as a result of the underlying fraudulent inducement. Holding, as we do, that plaintiffs' claims of fraudulent inducement are without merit, we find the parties validly entered into the waiver.

[27] "The right of a party to enforce a contract will not be forfeited or lost by reason of technical, inadvertent, or unimportant omissions or defects." Cablevision Systems Corp. v. Town of East Hampton, 862 F.Supp. 875, 885 (E.D.N.Y. 1994), aff'd 57 F.3d 1062 (2d Cir. 1995) (unpublished table decision), quoting Miller v. Benjamin, 142 N.Y. 613, 617, 37 N.E. 631 (1894).

breach. Plaintiffs have already been given ample time for discovery. In light of this and plaintiffs' conduct during such discovery, no additional discovery will be granted.[28]

INL's defense of breach is hereby struck as it pertains to the third counterclaim. Plaintiffs have also included in their pleadings an everything-but-the-kitchen-sink list of affirmative defenses that they do not even attempt to support.[29] Like their affirmative defenses of fraud and breach, we find these defenses to be without merit as they pertain to Cootes Drive's Third Counterclaim. We hereby award summary judgment in favor of Cootes Drive on their Third Counterclaim. INL is required to pay damages and interest to Cootes Drive for breach of the agreement.

2. Counterclaim Four: The Promissory Note

Cootes Drive's fourth counterclaim for breach of contract is for failure to repay a promissory note. In New York, proof of a promissory note, demand and nonpayment establishes a prima facie case for recovery.[30] A prima facie case entitles the promisee to judgment as a matter of law.[31] In the instant matter, plaintiffs concede that "Cootes Drive agreed to loan INL $500,000 . . . [as] memorialized by a promissory note dated December 5, 2000" (the "note"). Pls. Statement at ¶ 29–30. Plaintiffs further concede that Cootes Drive provided the funds; demanded payment on March 1, 2001; and that "[INL] has not paid the Note" Id. at 32–33. Based upon plaintiffs' admissions alone, Cootes Drive has squarely met the burden of proving a prima facie case.

---

[28] See Internet Law II, 2003 WL 21537782 (S.D.N.Y. 2003) (Carter, J.)
[29] Reply to Counterclaims at 17–19.
[30] See First Federal Sav. Bank v. Tazzia, 696 F.Supp. 904, 906 (S.D.N.Y. 1988) (Sweet, J.); National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont, 760 F.Supp. 334, 336 (S.D.N.Y. 1991) (Stanton, J.); Citicorp Intern. Trading Co., Inc. v. Western Oil & Refining Co., Inc., 790 F.Supp 428 (S.D.N.Y. 1992) (Sweet, J.).
[31] Gross v. Fruchter, 230 A.D.2d 710, 711, 646 N.Y.S.2d 53, 54 (N.Y.A.D. 2 Dept. 1996) (promisee established entitlement to judgment as a matter of law by producing note and demonstrating that maker failed to redeem when requested).

Once the promisee has demonstrated a prima facie case for recovery on a note, in order to avoid judgment, it is up to the maker to produce evidence showing a triable issue fact establishing a bona fide defense. Grasso v. John I. Shutts Agency, Inc., 517 N.Y.S.2d 113, 132 A.D.2d 768 (N.Y. App. Div. 1987). To this end, mere conclusory allegations will not suffice; a genuine and substantial issue rebutting holder's entitlement to payment must be shown. National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont, 760 F.Supp. 334, 336 (S.D.N.Y. 1991) (Stanton, J.). Without being explicit, plaintiffs seem to posit the same defenses to the payment of the note as the agreement, specifically that the note is a result of underlying fraud and that the defendants breached the note in some manner. Although, plaintiffs' fraud defense is invalid for the reasons described above, it is worth noting that it would not be applicable to the note because the plaintiff specifically waived his right to protest payment of the note. Note § 6 ("[a]ll payments of principal and interest shall be made without setoff, deduction or counterclaim.") Under New York law, such a waiver among sophisticated parties is effective to overcome virtually any defense to enforcement.[32]

Plaintiffs offer no theories as to how Cootes Drive has breached the conditions of the note. Plaintiffs merely allege that after entering the agreement, their position with creditors had become so poor that they had no one else to turn to for money. Even assuming this is an attempt to contrive a non-frivolous economic duress defense, the court finds no merit in it. Plaintiffs were not "forced to agree to [the note] by means of a wrongful threat precluding the

---

[32] Citicorp Intern. Trading Co., Inc., 790 F.Supp at 434; Thornock v. Kinderhill Corp., 749 F.Supp. 513 (S.D.N.Y. 1990) (Sweet, J.) (granting summary judgment in favor of promisee despite maker's defense of fraudulent inducement because such defense was not based upon misrepresentations concerning terms or conditions of loan itself); Bank of Suffolk County v. Kite, 49 N.Y.2d 827, 427 N.Y.S.2d 782 (1980) (Bank entitled to judgment on note despite alleged oral understanding that maker would not be liable where the unexpressed condition was inconsistent with the expressed terms of the note).

13

exercise of his free will."[33] INL's defenses to enforcement of the note fail. Summary judgment is awarded to Cootes Drive on their fourth counterclaim. INL must repay the principal and accrued interest on the note.

## CONCLUSION

Plaintiffs' request for the court to reconsider the judgment entered July 8, 2005 is DENIED. Plaintiffs' motion to dismiss Cootes Drive's counterclaims is DENIED. Both of plaintiffs' motions to supplement the record are DENIED. Cootes Drive's motions to strike the Carr Affidavit and First Tate Affidavit are DENIED. The Citco defendants' motion to strike the Second Tate Affidavit is GRANTED. Partial summary judgment in favor of Cootes Drive on its third and fourth counterclaims is GRANTED.

**IT IS SO ORDERED**

DATED:  New York, New York
        December 8, 2005

                                                ROBERT L. CARTER
                                                U.S.D.J.

---

[33] Signet Corp. v. Interbank Financial Services, Inc., 755 F.Supp. 103, 105 (S.D.N.Y. 1991) (Eldelstein, J.) quoting Austin Instrument, Inc. v. Loral Corp., 29 N.Y.2d 124, 130, 324 N.Y.S.2d 22, 25 (1971).

14